# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| A Samsung Galaxy Note 9 with blue flip case, serial number unknown; | ) ) ) ) ) | Case No. 2:23-sw-0743 AC |

**FILED**
Jul 24, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the  Eastern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) 21 U.S.C. § 846 | Distribution and Possession with Intent to Distribute Controlled Substances Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.
☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Brian Nehring
*Applicant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date: July 24, 2023

City and state: Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

PHILLIP A. TALBERT
United States Attorney
ROSS PEARSON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of A Samsung Galaxy Note 9 with blue flip case, serial number unknown; | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

I, Brian Nehring, hereby depose and state as follows:

### I.     INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit[1] in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a Samsung Galaxy Note 9 with blue flip case **(the Subject Device)**, serial number unknown, described more fully in Attachment A.

2. The **Subject Device** is in the custody of the Butte County Sheriff's Department in Oroville, California. There is probable cause to believe that the electronically stored information, as described in Attachment B, will be located on the **Subject Device**, and is evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, and 843(b). This request for a search warrant originates from an investigation into the Methamphetamine and Heroin trafficking activities of Steven Daniel WOODS, as set forth in more detail below.

---

[1] Magistrate Judge Claire previously authorized a warrant for this phone (2:23-sw-0419-AC), but the warrant inadvertently contained the wrong IMEI number for the cell phone. This affidavit is submitted to correct that prior error.

AFFIDAVIT                                                                 1

3. This affidavit is submitted for the limited purpose of securing a search warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal laws identified above have occurred, and that evidence, fruits, and instrumentalities of these violations are located at or on the **Subject Device**. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by the victim company, information provided by other agents and law enforcement officers, and information provided by records and databases.

## II.     AGENT BACKGROUND

4. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004 and I am still currently assigned to this office as of 2016.

5. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the Drug Enforcement Administration (DEA). In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia in 1991. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above. I have assisted in the execution of more than four hundred (400) warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by traffickers in their efforts to import, conceal, manufacture and distribute

1  controlled substances.  Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to
2  make a profit from those dealings or transactions, either for the purchase of additional substances or
3  material gain.  I have been actively involved as case agent in excess of two hundred (200) investigations
4  and have talked with confidential informants involved in the trafficking of narcotics, and this has formed
5  the basis of my opinions. I have been qualified as and have testified as an expert witness in both federal
6  and state court in the Northern and Eastern Districts of California and in counties including Alameda,
7  Contra Costa, Solano, Sacramento and others.  These areas of qualification have included possession for
8  sale, possession with intent to distribute, manufacturing of a controlled substance and cultivation.  As a
9  DEA agent, I am authorized to investigate violations of United States law and am a law enforcement
10 officer with the authority to execute warrants issued under the authority of the United States.  Prior to
11 my current position as a Special Agent with DEA I graduated from the California State University,
12 Sacramento with a BA in Criminal Justice in 1990.

### III.   PROBABLE CAUSE

14  6.  The United States government, including the DEA, is investigating Steven WOODS and
15 others regarding drug trafficking activities.  In May 2021, a grand jury charged WOODS with one count
16 of possession with intent to distribute a detectable amount of methamphetamine and one count of
17 possession with intent to distribute heroin. *United States v. Woods*, Case No. 2:21-cr-00100-JAM, ECF
18 No. 13 (E.D. Cal., May 27, 2021).

19  7.  During 2020, I conducted an investigation into the heroin and methamphetamine
20 trafficking activities of Steven Daniel WOODS whom I determined resided at the 5-acre rural property
21 located at 7515 Reservoir Road, Oroville, California.

22  8.  Inquiries with the California DMV revealed that WOODS had consistently provided a
23 resident address of 7515 Reservoir Road, Oroville, California since before 2010 and as recently as
24 November 2020, and that Steven WOODS had regularly and currently registered vehicles at this
25 address. I learned through property records that this location was owned by the WOODS Family Trust.

26  9.  Based upon this investigation, on February 16th, 2021, Magistrate Judge Allison Claire
27 authorized a search warrant for the property at 7515 Reservoir Road, Oroville, California to search for
28 items associated with violations of Title 21 USC 841(a)(1) and 846, Distribution and Conspiracy to

Distribute and Possess with Intent to Distribute Methamphetamine and Heroin.

10. On February 25th, 2021, at approximately 7:00 a.m., agents executed the search warrant at the property at 7515 Reservoir Road, Oroville, California. Agents contacted Lily WOODS, WOODS's mother, at the main residential structure. I spoke with Lily WOODS, who indicated this was her residence. Lily WOODS related that she allowed her son Steven WOODS to live on the property and to reside in a particular bedroom in the main house which she pointed out to me. I searched WOODS's identified room and located a large amount of paper indicia (paperwork, bills, envelopes, mailers, etc.) in his name throughout. Lily WOODS related that her son's business was buying and selling used vehicles, including all the vehicles parked along the north side of the property next to the workshop which he also used to fix and paint vehicles.

11. Agents subsequently made forced entry into the locked workshop to the east of the main residence. This workshop contained tools, motorcycle and auto parts and painting materials. Inside the workshop, agents located a separate locked office room which was also forced open. Inside this room, I located a large amount of paperwork and indicia throughout which only bore the name of Steven WOODS. Some of this indicia was located in a box on the floor which contained numerous bags and plastic wrappers in kilogram shapes and which bore both brown tar-like residue consistent with heroin and white crystalline residue consistent with methamphetamine; both these substances presumptive field tested positive. I also noted in this room a large amount items entirely consistent with large-scale drug dealing and the breaking down, adulterating and re-packaging of narcotics to include, but not limited to, digital scales, plastic wrapping and regular and vacuum seal bags bearing residue, coffee grinders bearing brown tar-like residue, drug adulterants including powder labelled Lactose, etc. I was subsequently informed by the Forensic Fingerprint examiner that one of the coffee grinders bearing residue which had tested positive for Heroin which had been located in the locked workshop (containing WOODS's paperwork) had been analyzed as bearing WOODS's identified fingerprints.

12. To the rear (east) of the back of the workshop, agents located a black 2006 Dodge Charger, California License Plate #8DUR858. Inquiries with the DMV revealed that this vehicle was purchased at an auto auction on 12/18/2020 and registered on 12/30/2020 in the name of Steven WOODS at 7515 Reservoir Road, Oroville, California. The vehicle was locked and agents made forced

entry into the trunk. Inside the trunk, agents located a large plastic tool box. Inside this tool box, agents located four large bundles which appeared to each contain a large amount of white crystalline material, suspected methamphetamine, within plastic bags further wrapped in green plastic wrap which matched the wrapping located in the workshop office. In this same plastic tool box, agents also located a large plastic bag containing seven (7) plastic wrapped bundles which each contained a dark brown material, suspected heroin.

13. Directly next to this plastic tool box containing the suspected methamphetamine and heroin, agents located a plastic storage case which when opened was found to contain a .40 caliber Glock P80, e.g. a Glock 80% pistol "lower" frame, with a synthetic aftermarket "upper" slide. This firearm bore no serial number and was loaded with a Glock Magazine fully loaded with Winchester brand .40 caliber ammunition. This plastic case also contained additional amounts of various types of ammunition in bags and in speed-loader holders, including .357 ammunition. Besides the plastic tool box containing the drugs and the plastic storage container with the firearm and ammunition, the trunk of this vehicle was nearly empty.

14. Inquiries with the National Criminal Information Center (NCIC) revealed that WOODS had a criminal history as an adult including, but not limited to: a 2004 felony conviction for Burglary and a 2 year prison sentence; 2006 felony convictions for Possession of Fraudulent Checks, Vehicle Theft and Possession of a Controlled Substance and a 16 month prison sentence; 2009 arrests in Butte County for Felon in Possession of a Firearm, Carrying a Loaded Firearm, Carrying a Concealed Firearm in a Vehicle, Receiving Stolen Property, Possession of Marijuana for Sale and Sales of Marijuana resulting in felony convictions for Possession of a Stolen Vehicle and Sales of Marijuana and a state prison commitment; 2013 felony convictions in Butte County for Receiving Stolen Property and Possession of a Controlled Substance for Sale and a sentence of 68 months imprisonment; 2015 arrests in Butte County for Possession of a Controlled Substance for Sale (multiple arrests), Felon in Possession of a Firearm (multiple arrests), Carrying a Loaded Firearm in a Public Place, Possession of a Controlled Substance While Armed with a Firearm, as well as additional separate 2016 arrests for Possession of a Controlled Substance for Sale, Transportation/Sales of a Controlled Substance, Felon in Possession of a Firearm Possession of a Controlled Substance While Armed with a Firearm and Possession of Stolen

Property, all of which appeared to result in 2017 felony convictions in Butte County for multiple counts of Possession of a Controlled Substance for Sale While Armed with a Firearm and Felon in Possession of a Firearm and a subsequent separate sentences of both 11 years and 156 months state prison.

15. On March 1st, 2021, the Honorable Judge Magistrate Deborah Barnes issued a federal arrest warrant for WOODS for violation of Title 21 USC 841(a)(1) and 846, Possession of Methamphetamine and Heroin with Intent to Distribute and Conspiracy to do so.

16. I was subsequent informed by the DEA Western Regional Laboratory that the substances located in the trunk of the vehicle owned by WOODS on 02-25-2021 were analyzed as being 1449.4 grams of Methamphetamine and 146.5 grams of Heroin.

17. I subsequently spoke with Butte Interagency Narcotics Task Force Officer Cody Stothers who related the following information. On May 12, 2021, at approximately 1215 hours, Detective Stothers observed WOODS as a passenger in a U-Haul truck near the Butte County Superior Court in Oroville, California. Detective Stothers knew WOODS had an active federal warrant for his arrest and followed the U-Haul truck into the nearby Dollar General parking lot in Oroville, California where he initiated a traffic stop of the vehicle. The female driver of the vehicle was identified and WOODS, who was in the passenger seat, was arrested without incident. During a search of the vehicle, Detective Stothers located a cell phone, a Samsung Galaxy Note 9 with a blue flip case (**The Subject Device**) near the passenger seat. The female driver advised the cell phone was not hers and that the property in the bed of the U-Haul truck and all of the items belonged to WOODS, except for the car seat. During a search of the bed of the U-Haul truck, BINTF Sergeant Burnett located a box containing firearm parts to include an assault rifle lower. WOODS has prior felony convictions and is prohibited from possessing firearms. Detective Stothers read WOODS his Miranda rights from my department issued note card, which he understood and waived. The Subject Device was locked and WOODS refused to provide the lock code. WOODS indicated he was taking the motorcycle in the rear of the U-Haul and the other items to his mother's house. When questioned about the firearms and firearms parts he invoked his rights. Detective Stothers related to me that the AR-15 lower received is considered a fully-functioning firearm, that it had no serial number and that by its configuration it was considered an assault weapon and was illegal under California law.

18. I believe based upon all the previous information, that it is highly likely that WOODS utilized the cellular telephone found in his possession at the time of his arrest has used this particular cellular telephone to communicate with his drug source of supply as well as with his drug customers, and that evidence of narcotics related text messages between WOODS and these persons, either through regular text means and/or the Signal App, may still be present on the telephone.

19. Based on my training and experience, I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice, text message or app. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.

20. Based on my training and experience, I know that mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotic trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who too pictures of evidence of a crime. Mobile telephone companies also store the data described in this paragraph on their serves and associate the data with particular users' mobile telephones.

### IV.     CELL PHONES

21. Based on my training, experience, and research, I know that the **Subject Device** has the capability of serving as a wireless telephone, digital camera, and PDA.  In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a) Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b) Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c) PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and using computer programs. Some PDAs also function as wireless communication devices and are used to

access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

## V.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

24.     <u>Forensic evidence.</u> As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

a)     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)     The process of identifying the exact electronically stored information on a storage

AFFIDAVIT                                                    9

medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes is necessary to establish that a particular thing is not present on a storage medium.

25. I know that when an individual uses an electronic device to coordinate narcotics trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

a) <u>Nature of examination.</u> Based on the forging, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

b) <u>Manner of execution</u>. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

AFFIDAVIT 10

## VI. CONCLUSION

26. On the basis of my participation in this investigation and the information summarized above, I have probable cause to believe that the **Subject Device** maintains evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, and 843(b). The items listed in Attachment B are evidence of these crimes, contraband, or fruits of these crimes, or property that is or has been used as instrumentalities to commit the foregoing offenses. Therefore, I respectfully request that a warrant be issued that authorizes the search of the **Subject Device** described in Attachment A and the seizure of the electronically stored items listed in Attachment B.

Respectfully submitted,

/s/ Brian Nehring
Brian Nehring
Placer County Sheriff's Office

Subscribed and sworn to me telephonically on this 24th day of July, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA ROSS PEARSON

AFFIDAVIT      11

# ATTACHMENT A

# DEVICES TO BE SEARCHED

The device to be searched is a black Samsung cellular telephone displaying IMEI #553680100736349.  The Subject Device is in the custody of the Federal Bureau of Investigation Roseville, California.

# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 846 since January 1, 2020 to Present, including:

    a. Any records of incoming, outgoing calls, and missed call history for the time, which would include the number associated with the phone, last numbers dialed, last calls received, time of calls and duration of calls;

    b. Any incoming and outgoing recorded messages and stored voicemail messages;

    c. Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

    d. Any incoming, outgoing, or draft text messages;

    e. Any photographs, video images, and audio clips;

    f. Stored reminders, memos, notes, documents, and lists;

    g. Data identifying the owner and/or user(s) of the telephone;

    h. Passwords used to access the electronic data described above; and

    i. Any records of appointments and/or reminders annotated on a calendar.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

| In the Matter of the Search of | ) | |
|---|---|---|
| A Samsung Galaxy Note 9 with blue flip case, serial number unknown; | ) ) ) ) ) | Case No.  2:23-sw-0743 AC |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the    Eastern    District of    California
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    July 24, 2023 @ 1:31 p.m.

City and state:    Sacramento, California

*Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge                                                                                          Date

# ATTACHMENT A

# DEVICES TO BE SEARCHED

The device to be searched is a black Samsung cellular telephone displaying IMEI #553680100736349.  The Subject Device is in the custody of the Federal Bureau of Investigation Roseville, California.

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 846 since January 1, 2020 to Present, including:

    a. Any records of incoming, outgoing calls, and missed call history for the time, which would include the number associated with the phone, last numbers dialed, last calls received, time of calls and duration of calls;

    b. Any incoming and outgoing recorded messages and stored voicemail messages;

    c. Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

    d. Any incoming, outgoing, or draft text messages;

    e. Any photographs, video images, and audio clips;

    f. Stored reminders, memos, notes, documents, and lists;

    g. Data identifying the owner and/or user(s) of the telephone;

    h. Passwords used to access the electronic data described above; and

    i. Any records of appointments and/or reminders annotated on a calendar.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.